**IT IS ORDERED as set forth below:**



Date: October 16, 2009

_____
**Robert E. Brizendine
U.S. Bankruptcy Court Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. G09-22028-REB |
| | ) | |
| HIDDEN LAKE ACADEMY, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | JUDGE BRIZENDINE |

**ORDER GRANTING MOTION FOR
AUTHORITY TO USE CASH COLLATERAL**

**IT APPEARING TO THIS COURT** that on May 21, 2009 Hidden Lake Academy, Inc. (the "Debtor"), filed its "Motion Requesting Entry of Interim Order Authorizing the Use of Cash Collateral and Scheduling Final Hearing on Debtor's Request to Use Cash Collateral" (the "Motion"); and

**IT FURTHER APPEARING TO THIS COURT** that the Motion first came before the Court for a preliminary hearing at 1:30 a.m. on June 3, 2009 (the "First Hearing"); and

**IT FURTHER APPEARING TO THIS COURT** that counsel for the Debtor, and Branch Banking and Trust Company ("BB&T") have agreed that, given the passage of time

WCSR 4215489v1

since the Petition Date, it is in the best interests of all parties to conclude a final cash collateral order that, among other things, governs the Debtor's use of BB&T's cash collateral during the pendency of this case, and the United States Trustee has no objection to the entry of such an Order; and

**IT FURTHER APPEARING TO THIS COURT** that counsel for the Debtor and BB&T have consented to the entry of this Order Granting Motion for Authority to Use Cash Collateral (the "First Interim Order") by the signatures of their undersigned counsel; **THIS COURT HEREWITH FINDS** as follows:

A. On May 14, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court, and is continuing to manage its assets as debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

B. The Debtor owns certain improved real property located in Lumpkin County, Georgia, that is used by HLA, Inc. and one of more of its affiliate companies for the operation of a school for teenagers with certain psychological or behavioral challenges.

C. BB&T made a pre-petition loan to HLA (the "Loan Obligation") that was the subject of a corporate guaranty from the Debtor.

D. In order to secure repayment of the Loan Obligation, and the Debtor's Guaranty thereof, on September 19, 2006 the Debtor conveyed to BB&T a first priority security interest in and to more than 190 acres of real property located in Lumpkin County (the "Property").

E. The Debtor's conveyance of a security interest in the Property is evidenced by the certain Deed to Secure Debt that has been recorded in the real property records maintained by the Clerk of the Superior Court of Lumpkin County at Deed Book 1005, Page 652.

F. In order to further secure repayment of the Loan Obligation and the Debtor's Guaranty thereof, the Debtor conveyed to BB&T a first-priority security interest in and to the rents, revenues and profits accruing from the Property (the Property, and the rents and revenues accruing therefrom, or hereinafter referred to as the "Pre-Petition Collateral").

G. The Debtor's conveyance of a security interest in the rents and revenues from the Property is evidenced by the certain Assignment of Rents and Revenues that has been recorded in the real property records maintained by the Clerk of the Superior Court of Lumpkin County at Deed Book 1005, Page 661.

H. BB&T asserts that HLA, and the Debtor as Guarantor, are obligated to BB&T for $6,846,438.65 as of May 14, 2009, with interest continuing to accrue at the rate of $959.7445 per diem.

I. Prior to, on and after the Petition Date, the Debtor is entitled to collect rents, revenues and cash proceeds from the Pre-Petition Collateral (the "Cash Collateral"). The Debtor now seeks to use the Cash Collateral to operate its business.

J. The Debtor asserts that it is in the continued best interest of the estate and its creditors that the Debtor be permitted to use Cash Collateral in the manner provided for herein.

K. Notice of this Motion has been provided to necessary parties in compliance with Federal Rules of Bankruptcy Rule 4001(b)(2).

WCSR 4215489v1

Based upon the foregoing and the consent of the parties hereto, through counsel, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. **Usage Period.**  Subject to the terms and conditions contained herein, the Debtor is authorized to use Cash Collateral through the earlier of (i) repayment in full of all obligations due from HLA and the Debtor to BB&T, including such interest, expenses and attorneys fees as may be agreed to by the parties or approved by further order of this Court; or (ii) the date the Debtor's right to use Cash Collateral terminates (the "Termination Date") in accordance with paragraph 14 below (the "Usage Period").

2. **Projected Use of Cash.**  Unless BB&T shall otherwise agree in writing, the amount of Cash Collateral which the Debtor may use during the Usage Period shall not exceed, each line item set forth in the budget attached hereto as Exhibit "A" (the "Budget").  In the event that the Debtor develops a surplus in regard to any line item, the Debtor shall not apply said surplus to a separate line item where the Debtor anticipates exceeding the line item limitation absent written consent of BB&T. In the event the Usage Period terminates in the middle of a week, the amount budgeted for that week shall be prorated accordingly.

3. **Authorized Disbursements.**  The Debtor shall only be authorized to use Cash Collateral for the actual and necessary expenses of operating the Debtor and conducting the Debtor's business affairs pursuant to the Budget, as set forth above. Unless otherwise authorized by order of the Court, the Debtor shall not use Cash Collateral for (i) the payment of any pre-petition indebtedness or obligations of, or pre-petition claims against, the Debtor, or (ii) the payment of any obligation of, or claims against, any insider or employee of the Debtor; (iii) the

payment of any debts or mortgage obligations related to any real property of the Debtor or any of its affiliates that does not comprise the Pre-Petition Collateral.

4. **Lien on Post-Petition Collateral.**  Pursuant to 11 U.S.C. §§ 361 and 363, as adequate protection for its interests in the Cash Collateral, to the extent that the Debtor uses Cash Collateral, BB&T is granted a continuing valid, attached, choate, enforceable, perfected and continuing security interest in, and lien upon, all post-petition assets of the Debtor of the same type and to the same extent as (i) the collateral securing the Debtor's indebtedness to BB&T prior to the Petition Date (the "Post-Petition Collateral").  The priority of said security interests in, and liens upon, the Post-Petition Collateral shall be the same priority as existed in and upon the Pre-Petition Collateral.  The liens and security interests granted by this Order shall, upon entry of this Order, continue to be perfected as of the Petition Date, without regard to applicable federal, state or local filing and recording statutes, and without further action of any party; provided, however, that with respect to the post-petition liens and security interests granted by this Order, BB&T may, but need not, take such steps as it deems desirable and necessary to comply with such statutes, and all financing statements and other documents that are filed listing the Debtor and BB&T, as applicable, shall be deemed to have been filed and the post-petition liens and security interests thereby shall be deemed perfected on the Petition Date.

5. **Validity of Collateral Claims.**  Nothing herein shall be deemed an admission by the Debtor as to the extent, validity or perfection of BB&T's security interests in the Pre-Petition Collateral, the Post-Petition Collateral or the Cash Collateral.  The Debtor is directed to expeditiously inquire into the extent, validity and perfection of BB&T's security interests, with the expectation that any subsequent order authorizing the use of cash collateral shall have a

recitation regarding the validity, scope, perfection and extent of BB&T's collateral.  In the event BB&T's security interests in, or lien upon, the Pre-Petition Collateral is reduced or invalidated by order of this Court, then its security interests in, and liens upon, the Post-Petition Collateral granted by this Order shall be reduced or invalidated commensurately.

6. **Deposits of Cash Collateral.**  All Cash Collateral shall be deposited in the Debtor's debtor-in-possession Operating Account.

7. **Continuing Payments to BB&T**.  Within three (3) days from the entry of this Order on the docket BB&T shall have received three (3) payments from the Debtor totaling $30,000.00.  BB&T shall be authorized to negotiate said payments and apply the payments to the amounts outstanding under the Loan Obligation.  Beginning as of July 15, 2009, and continuing on the 15th day of each month thereafter until September 15, 2009, the Debtor has agreed to pay to BB&T the sum of $10,000.00 per month.  Beginning on October 15, 2009, and continuing on the fifteenth day of each month until the termination of the Usage Period, the Debtor shall pay to BB&T the sum of $20,000.00 per month, which BB&T shall be authorized to negotiate and apply to the sums due under the Loan Obligation.  BB&T's acceptance and negotiation of any sums paid in accordance with this paragraph shall not constitute, and shall not be deemed to be, an admission by BB&T that the sums paid constitute adequate protection of BB&T's interests in the property of the Debtor.  The payment by the Debtor of the sums due under this Paragraph shall not constitute, and shall not be deemed to be, an admission by the Debtor that BB&T is entitled to any adequate protection of its interests in the property of the Debtor.

8. **Accounting.** The Debtor shall at all times (a) sequester, segregate and account for all Cash Collateral that comes into its possession, custody or control, (b) keep and provide on a

WCSR 4215489v1

periodic basis (no less than monthly) records reasonably sufficient for BB&T to determine the status of Cash Collateral collections and expenditures, and (c) provide to BB&T copies of the monthly operating reports filed with this Court and with the Office of the United States Trustee. On the first day of the month following the entry of this Interim Order, and continuing on the first day of each month during the term of this Order, the Debtor shall provide to John A. Thomson, counsel for BB&T, and Buzz Anderson, consultant to BB&T, or such other consultant as BB&T may from time to time designate (the "Consultant"), by facsimile or e-mail, the following information: (i) all receipts for the preceding month; (ii) all disbursements for the preceding month, including one line item for payroll and a total line item for all disbursements; (iii) a copy of the electronic statement for the Debtor's Debtor-in-possession Operating Account as of the close of business on the last day of the prior month.

9. **Access to the Property**. During the Usage Period the Debtor shall provide the Consultant with the following access to the Property:

(a) The right to inspect the Property, upon twenty-four (24) hours notice and during reasonable business hours, but only with the escort of designated personnel of the Debtor or HLA. Said inspection may include any and all buildings, structures, improvements, fixtures, attachments, partitions, machinery, equipment, building materials, appliances and goods of every nature whatever now or hereafter located on, or attached to, the Property. To the extent that the Consultant requires access to locked or limited access areas on the Property, the Debtor shall provide the Consultant with such access on twenty-four (24) hours notice during reasonable business hours.

- 7 -

    (b)    The right to verify that the Property is adequately and completely insured with appropriate coverages in such amounts as are typical for similar types of commercial property. To the extent that the Consultant requires access to insurance policies or other insurance documentation, Hidden Lake shall provide the Consultant with such access on twenty-four (24) hours notice during reasonable business hours.

10.    **Insurance.**  To the extent that it remains necessary and appropriate, the Debtor shall insure the Pre-Petition Collateral and the Post-Petition Collateral against all risks to which it may be exposed, including loss, damage, fire, theft and all other such risks, in an amount not less than the fair market value of such collateral, with such insurance providers, and under such policies, and in such form as is appropriate for a business of a type similar to the Debtor using sound business judgment.

11.    **Failure of Adequate Protection.**  The terms and conditions of this Order are intended to provide BB&T with adequate protection for its interests in the property of the Debtor. Nothing herein shall be construed as an admission by BB&T that its interest in the property of the Debtor, including the Cash Collateral, is adequately protected; nor shall any provision of this Order be construed as an admission by the Debtor that any provision of this Order is necessary to provide adequate protection of such interests. In the event that the adequate protection granted hereunder to BB&T fails to adequately protect the interests of BB&T, then BB&T may seek, upon notice and hearing, a super-priority administrative claim under 11 U.S.C. § 507(b), and upon entry of an appropriate order such claim shall have priority over all other claims, costs and expenses and shall at all times be senior to the rights of the

Debtor and any creditors or claimants in this proceeding or any subsequent proceeding under Bankruptcy Code, with the exception of quarterly payments due and payable to the U.S. Trustee.

12. **Surcharge of Collateral.**  There shall be no surcharge of the Post-Petition Collateral absent either i) an agreement between the Debtor and BB&T regarding a carve-out for the approved fees and expenses of professionals retained by the Debtor that has been duly approved by this Court; or ii) an Order of this Court, after appropriate notice and hearing, that authorizes the payment of the Debtor's post-petition administrative expenses from the Post-Petition Collateral.

13. **Unauthorized Use of Cash Collateral.**  Should the Debtor use Cash Collateral for any purpose not authorized herein, the respective security interests and liens of BB&T granted hereunder shall automatically attach to any assets acquired with such Cash Collateral.

14. **Events of Default.**  Each of the following shall constitute an "Event of Default" under this Order:

   (a) The occurrence of any material breach, default or non-compliance with the terms of this Order;

   (b) Failure to pay the amounts due under Paragraph 7 hereinabove;

   (c) The Debtor's failure to file its Plan of Reorganization prior to October 31, 2009;

   (d) Conversion of this Chapter 11 case to a case under Chapter 7; and

   (e) Appointment of a trustee in this Chapter 11 case.

Upon the occurrence of an Event of Default, BB&T may elect to terminate the Debtor's right to use its Cash Collateral hereunder by giving written notice of termination to counsel for the Debtor and filing a copy of such written notice with the Court.  Unless otherwise directed by

WCSR 4215489v1

order of this Court, the Debtor's right to use BB&T's Cash Collateral shall terminate on the fifth business day following receipt of such written notice.

15. **<u>Termination</u>.**  Upon payment to BB&T of all sums due and owing from the Debtor to BB&T, including such attorneys fees, expenses and interest as the parties may agree upon or this Court shall order, pursuant to 11 U.S.C. §§ 503 or 506, or upon confirmation by the Debtor of a Plan of Reorganization in this case, the Debtor's authority to use cash collateral shall no longer be subject to the terms of this Order, although this Order, and all provisions of this Order other than those pertaining to (i) the amount and character of the Debtor's expenditures; and (ii) the Debtor's reporting requirements to BB&T, shall remain in full force and effect.

16. **<u>Effect of Modification, Vacation or Stay</u>.**  If any provision of this Order is hereafter modified, vacated or stayed, such modification, vacation or stay shall not (i) affect the validity or authority of the Debtor's use of Cash Collateral under this Order prior to such time, (ii) impact or make any payments made under this Order subject to recovery from BB&T, nor (iii) affect the validity, priority or enforceability of the security interests and liens granted BB&T for such use, prior to the effective date of such modification, vacation or stay.

17. **<u>Restriction on Borrowing or Sale</u>.**  Unless otherwise authorized by order of the Court, following notice to BB&T and such other parties as may be required by Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Court, the Debtor shall not obtain any post-petition financing or sell or lease any of its assets, except in the ordinary course of its business.

18. **<u>No Waiver of Right to Seek Interest and Attorneys' Fees</u>.**  Nothing herein shall be deemed to constitute (a) a waiver of any right of BB&T to later request or assert that it is

entitled to recover interest and/or attorneys' fees on its secured claims, or (b) a waiver of the

Debtor of its right to challenge or oppose such request or assertion.

## END OF DOCUMENT

**Consented to by:**

ELLENBERG, OGIER, ROTHSCHILD & ROSENFELD, P.C.

   /s/ Barbara Ellis-Monro
Barbara Ellis-Monro
Georgia Bar No. 246117
[by John A. Thomson, Jr. w/ express permission]

170 Mitchell Street, N.E.
Atlanta, Georgia 30303
(404) 525-4000

**Counsel for Hidden Lake Academy, Inc.**

WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC

   /s/ John A. Thomson, Jr.
John A. Thomson, Jr.
Georgia Bar No. 706760

271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363-1017
(404) 888-7409

**Counsel for Branch Banking & Trust Company**

*[Signatures of Counsel continue on next page]*

- 11 -

**No Objection:**

OFFICE OF UNITED STATES TRUSTEE

/s/ James H. Morawetz
James H. Morawetz
Georgia Bar No. 521900
[by John A. Thomson, Jr. w/ express permission]

Richard Russell Federal Building
Room 362
75 Spring Street, S.W.
Atlanta, GA  30303
(404) 331-4437

**Attorney Advisor to the United States Trustee**

- 12 -

EXHIBIT "A" HIDDEN LAKE ACADEMY, INC. BUDGET

|  | Sept 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Jan 2010 | Feb 2010 | Mar 2010 |
|---|---|---|---|---|---|---|---|
| Income |  |  |  |  |  |  |  |
| Rent Income from HLA | 10,000 | 20,000 | 20,000 | 20,000 | 53,770 | 53,770 | 53,770 |
| Mgmt Fee from HLA | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 |
| Total Income | 36,160 | 46,160 | 46,160 | 46,160 | 79,930 | 79,930 | 79,930 |
| Expenses |  |  |  |  |  |  |  |
| Hidden Lake Payroll | 21,800 | 21,800 | 21,800 | 21,800 | 21,800 | 21,800 | 21,800 |
| Hidden Lake Payroll Taxes | 4,360 | 4,360 | 4,360 | 4,360 | 4,360 | 4,360 | 4,360 |
| Total Payroll | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 26,160 |
| Repayment of Debit | 10,000 | 20,000 | 20,000 | 20,000 | 53,770 | 53,770 | 53,770 |
| Total Expenses | 36,160 | 46,160 | 46,160 | 46,160 | 79,930 | 79,930 | 79,930 |
| Net Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| April 2010 | May 2010 | June 2010 | July 2010 | Aug 2010 | YTD 2009/2010 |
|---:|---:|---:|---:|---:|---:|
| 53,770 | 53,770 | 53,770 | 48,770 | 48,770 | 490,160 |
| 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 313,920 |
| 79,930 | 79,930 | 79,930 | 74,930 | 74,930 | |
| | | | | | |
| 21,800 | 21,800 | 21,800 | 21,800 | 21,800 | 261,600 |
| 4,360 | 4,360 | 4,360 | 4,360 | 4,360 | 52,320 |
| 26,160 | 26,160 | 26,160 | 26,160 | 26,160 | 313,920 |
| | | | | | |
| 53,770 | 53,770 | 53,770 | 48,770 | 48,770 | 490,160 |
| | | | | | |
| 79,930 | 79,930 | 79,930 | 74,930 | 74,930 | 804,080 |
| | | | | | |
| 0 | 0 | 0 | 0 | 0 | 0 |

## DISTRIBUTION LIST

John A. Thomson, Jr., Esq.
Womble Carlyle Sandridge & Rice, PLLC
271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363-1017


James H. Morawetz, Esq.
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, SW.
Atlanta, GA 30303


Barbara Ellis-Monro, Esq.
Ellenberg, Ogier, Rothschild and Rosenfeld, P.C.
170 Mitchell Street, N.E.
Atlanta, Georgia 30303


M. Denise Dotson, Esq.
M. Denise Dotson, LLC
170 Mitchell Street, N.E.
Atlanta, Georgia 30303