**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CHAPTER 11** |
| **HIDDEN LAKE ACADEMY, INC** | ) | |
| | ) | **CASE NO.  09-22028** |
| _____**Debtor.**_____ | ) | |

---

**DISCLOSURE STATEMENT FOR
PLAN OF REORGANIZATION
FOR HIDDEN LAKE ACADEMY, INC.**

**Dated this 30th day of October, 2009**

---

Filed by:

Hidden Lake Academy, Inc.

Attorneys for Debtor and Debtor in Possession,
Barbara Ellis-Monro
Ellenberg, Ogier, Rothschild & Rosenfeld, PC
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 525-4000 Telephone
(404) 526-8855 Facsimile
bem@eorrlaw.com

## Disclaimer

*All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in the Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

*This Disclosure Statement shall not be admissible in any nonbankruptcy proceeding involving the Debtor and any party, nor shall it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtor; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default.*

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR. NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN WHICH IS OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY EFFORT, HOWEVER, HAS BEEN MADE TO PROVIDE ADEQUATE FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT. THE REPRESENTATIONS BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE. NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN DESIGNED TO FORECAST CONSEQUENCES WHICH FOLLOW FROM A GENERAL REJECTION OF THIS PLAN, ALTHOUGH AN ATTEMPT IS MADE TO STATE THE CONSEQUENCES OF A LIQUIDATION OF THE DEBTOR.

## I.    <u>Introduction and General Information</u>

This disclosure statement ("Disclosure Statement") is submitted by Hidden Lake Academy, Inc. (the "Debtor"), to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by the Debtor.  This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition history and events that have occurred during the Debtor's Chapter 11 case.  This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Debtor's Chapter 11 case, and financial information.  Although the Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions.  Factual information contained in this Disclosure Statement has been provided by the Debtor's management, except where otherwise specifically noted.  The Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission.  The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving the Debtor or any other party; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Debtor's Plan as to holders of Claims or Interests.  You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties.  Although the Debtor has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by the Debtor may not materialize.  In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

Parties voting on the Plan should read both the Plan and this Disclosure Statement.

A.      **Definitions**

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.  In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan.

B.      **The Disclosure Statement**

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtor and all holders of Claims against and Interests in the Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan.  Thus, you are encouraged to read this Disclosure Statement carefully.  In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan.  This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

II.     **Voting on the Plan  and Confirmation Process**

A.      **Voting Instructions**

Accompanying this Disclosure Statement are copies of the following documents:  (1) the Plan; (2) a Notice to Voting Classes; and (3) a Ballot to be executed by Holders of Claims in Classes 2 through 8 (the "Voting Classes"); which classes are entitled to vote to accept or reject the Plan.  The Ballot contains voting instructions.  Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in the Voting Classes for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, the law offices of Ellenberg, Ogier, Rothschild &

Rosenfeld, PC, 170 Mitchell Street, SW, Atlanta, GA 30303 (404) 525-4000 (Attn: Barbara Ellis-Monro, Esq.).

IN ORDER FOR YOUR BALLOT TO COUNT IT MUST BE RECEIVED WITHIN THE TIME INDICATED ON THE BALLOT AND THE BALLOT MUST CLEARLY INDICATE YOUR CLAIM, THE CLASS OF YOUR CLAIM, AND THE AMOUNT OF YOUR CLAIM.

BY ENCLOSING A BALLOT, THE DEBTOR IS NOT ADMITTING THAT YOU ARE ENTITLED TO VOTE ON THE PLAN, IS NOT ADMITTING THAT YOUR CLAIM IS ALLOWED AS SET FORTH ON THE BALLOT, AND IS NOT WAIVING ANY RIGHTS TO OBJECT TO YOUR VOTE OR YOUR CLAIM.

### B.    <u>Who May Vote</u>

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan.  As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote.  Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (1) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in the Debtor's Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount.  In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes.  <u>Accordingly, if you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes.</u>

THE DEBTOR IN ALL EVENTS RESERVES THE RIGHT THROUGH THE CLAIM RECONCILIATION PROCESS TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM FOR DISTRIBUTION PURPOSES UNDER THE PLAN.

### C.    <u>Requirements of Confirmation</u>

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met.  Those requirements include the following:

    1.    The Plan classifies Claims and Interests in a permissible manner;

2.    The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5.    The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote.  If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class.  The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders.  Debtor will seek to "cram down" the Plan if it is accepted by an Impaired Class over the objections of a dissenting class.

### D.    Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-thirds in amount of Allowed Claims actually voting.   In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.  If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains anything under the Plan.

### E.    Confirmation Hearing

The Bankruptcy Court has entered an order (the "Scheduling Order") that schedules a final hearing to approve the Disclosure Statement and to consider confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order Approving Disclosure Statement and Notice of Confirmation Hearing.  The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

**F.    Objections to Confirmation**

As will be set forth in the Scheduling Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtor.  The Scheduling Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

**G.    Whom to Contact for More Information**

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact Barbara Ellis-Monro at the address indicated below or by telephone at (404) 525-4000.  If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact the law offices of Ellenberg, Ogier, Rothschild & Rosenfeld, PC, 170 Mitchell Street, Atlanta, GA 30303, Attn: Barbara Ellis-Monro; or by facsimile at (404) 526-8869, or by electronic mail, at bem@eorrlaw.com.

**III.    Historical Background**

**A.    Description of the Debtor**

Debtor, a Georgia corporation, organized and began operations in 1994. Debtor owns approximately 196.3 acres of real estate located at 830 Hidden Lake Road, Dalhonega, Georgia ("Real Property").  Debtor derives its income from provision of management services and the lease of real property and improvements to two (2) affiliated entities, Ridge Creek School ("RSC") and HLA, Inc. ("HLA").  HLA and RCS operate therapeutic boarding schools on the Real Property.  HLA filed a voluntary petition under Chapter 11 of Title 11 of the United States Code pending in this Court case no. 09-22026. RCS is not a debtor under Title 11 of the United States code. The Debtor employed 12 individuals as of the filing of its case.  In an effort to reduce its costs, overlapping job responsibilities and as required by current enrollment, as of the date hereof the Debtor employs 7 individuals, two (2) of whom are full time employees.  HLA pays the Debtor a management fee equal to the salaries of the Debtor's employees and certain other expenses necessary to operation HLA and RCS, including the leases of telephone and computer systems located at the facilities.  HLA is also obligated to make lease payments to the Debtor which are then passed through to the Debtor's secured lender.  HLA is not current on its lease payments and currently owes the Debtor approximately $2,000,000.00 in back rent.

Dr. Leonard Buccalleto is the sole shareholder and Chief Executive Officer of the Debtor. Dr Buccalleto founded the schools operated by HLA and RCS in 1994 and 2000 respectively.

From 1994 through September, 2006, the enrollment at HLA averaged 135 students and provided sufficient operating income for the Debtor to pay its employees and service its mortgage debt. In September, 2006, a group of former students and their parents filed that certain law suit captioned *Ryan et.al. v. Hidden Lake Academy, HLA, Inc., Hidden Lake Academy Foundation, Leonard Buccellato* (the "Litigation"), alleging breach of contract claims and seeking class action status.

The filing of the Litigation had a severely negative impact on the Debtor's enrollment and while the Litigation was pending, the enrollment at HLA dropped to 40. The drop in enrollment caused HLA's cash flow to decrease such that it was not able to pay its lease obligations to the Debtor and thus, the Debtor was not able to make payments on its mortgage.

The Litigation was settled in October, 2008 and in February, 2009 the District Court entered a consent judgment in the Litigation. Notwithstanding the settlement, enrollment continued to be adversely affected, due in large part to negative postings on the internet such that HLA was not able to pay its obligations to Branch Banking and Trust Company ("BB&T) and BB&T began advertising for foreclosure of its interest in the Real Estate which secures the Debtor's guaranty of HLA's obligations to BB&T.

### B.    Prepetition Assets and Liabilities

The Debtor's assets as of the date of the Filing Date consisted of the Real Property with a value of approximately $10,000,000.00.

As of the Filing Date, Debtor's estimated liabilities totaled $7,637,928.76 and included the following: (a) secured claims totaling $6,959,474.10; (b) priority tax claims totaling $246,487.54, and (c) unsecured claims totaling $431,967.12. Since the Petition Date, certain non-debtor defendants in the Litigation have paid the judgment in full and thereby reduced the Debtor's general unsecured obligations by $400,000.00 to $31,967.12.

## IV.   The Chapter 11 Case

### A.    Reasons for Filing Chapter 11

Debtor filed bankruptcy to stop a pending foreclosure. Branch Banking and Trust Company ("BB&T") the mortgage holder, scheduled a foreclosure on the Real Property for June 3, 2009. In addition, the judgment creditors filed garnishments against all of the Debtor's and HLA's bank accounts. Just before the filing of this case, the judgment creditors garnished in excess of $70,000 from the Debtor and HLA's bank accounts.

### B.    Professionals

On May14, 2009, Debtor filed an application ("Application") requesting authorization to retain the law firm of Ellenberg, Ogier, Rothschild & Rosenfeld, PC ("EORR") to serve as

bankruptcy counsel in this case.  On June 26, 2009, the Court entered an Order approving employment of EORR as counsel for the Debtor as of the Petition Date.

### C.    Schedules

On June 8, 2009, Debtor filed its schedules and statement of financial affairs.  A copy of the schedules and statement of financial affairs can be reviewed at the Office of the Bankruptcy Clerk, 1340 Richard B. Russell Federal Building, 75 Spring Street, Atlanta, Georgia, during normal business hours or online at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users).

### D.    Payments to Creditors Within the Ninety (90) Days Prior to the Filing Date

Payments to creditors during the ninety (90) days prior to the Filing Date are set forth in the schedules and statement of financial affairs.

Under the Bankruptcy Code, Debtor may seek to avoid and recover certain transfers that occur within the ninety (90) days prior to the Filing Date as preferential under Sections 547 and 550 of the Bankruptcy Code.  The transfers which may be subject to avoidance and recovery must aggregate in value over $5,475.00.  The only transfers during this time period were payments to Lumpkin County on account of property taxes on the Real Property and regular payroll to the Debtor's employees.

### E.    Payments to Insiders Within One (1) Year Prior to the Filing Date

There only payments to insiders within (1) year period prior to the filing date were salary payments totaling $36,600.00 to Dr. Buccellato.

### G.    Bar Motion

On August 7, 2009, Debtor filed a motion ("Bar Motion") requesting that the Court enter an order establishing September18, 2009 as a deadline for creditors to file proofs of claim.  The Court entered an order establishing September 18, 2009 as the deadline for filing claims in this case.

### H.    Cash Collateral Motion

On May 21, 2009, Debtor filed a Motion Requesting Entry of Interim Order Authorizing Use of Cash Collateral and Scheduling Final Hearing on Debtor's Request to Use Cash Collateral to allow it to continue to use the income received from HLA for the lease of the Real Property.  On October 16, 2009, the Court entered an Order Granting Motion For Authority to Use Cash Collateral which provides for the Debtor's continued use of rental income and grants BB&T a lien in post-petition rental income to the same priority, extent and valid as BB&T's lien in prepetition rental income.

## V.    Summary of the Plan

**The following summary of the Plan provides only a brief description of its provisions. The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for an equitable distribution to Debtor's creditors and preserves the Debtor's ongoing business operations. The Debtor believes that any alternative to confirmation of the Plan, such as liquidation or attempts by other parties in interest to file a competing plan, would result in significant delays and/or impaired recoveries. Moreover, the Debtor believes that the creditors will receive greater and earlier recoveries under the Plan than those that would be achieved in liquidation or under an alternative plan. FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

The Plan contemplates the reorganization of the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to sections 1129(b) and 1123 of the Bankruptcy Code. The Plan classifies all Claims against and Interests in the Debtor into separate Classes.

## VI.    Description of the Plan

### A.    Retention of Property by the Debtor

Upon confirmation, the Reorganized Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors. The Reorganized Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by the Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtor's Schedules).

### B.    Continuation of Business Operations

Following confirmation, the Reorganized Debtor will continue to operate its business.

### C.    Parties Responsible for Implementation of the Plan

Upon confirmation, the Reorganized Debtor will be charged with administration of the Case. The Reorganized Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's office. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as possible after substantial consummation, the completion of the

10

claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation.

Dr. Buccellato will continue as the Chief Executive Officer of the Debtor and will not receive any compensation.

### D.    Liabilities of the Reorganized Debtor

The Reorganized Debtor will not have any liabilities except those expressly assumed under the Plan.  The Reorganized Debtor will be responsible for all Operational Expenses (defined as the normal and ordinary costs and expenses of operating the Debtor's business, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtor's business, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Filing Date, and those Operational Expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the Operational Expense claim.

### E.    Funding of the Plan

The Debtor shall pay all claims from the Debtor's postpetition operational income.  The Debtor's receipt of income for postpetition operations shall constitute the source for payment of creditors by the Debtor under the Plan.

The Plan provides that the Debtor shall act as the Disbursing Agent to make payments under the Plan unless the Debtor appoints some other entity to do so.  The Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business.  The Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

Copies of Debtor's cash flow statement, prepetition balance sheet, and federal tax returns are attached hereto as Exhibits "A", "B", and "C".  Prior to the hearing on this Disclosure Statement Debtor will supplement the Disclosure Statement with additional information, including but limited to a Profit & Loss Budget Overview for HLA and a budget for the Debtor.

### F.    Provisions Regarding Executory Contracts

The Debtor provides management and marketing services to HLA and RCS pursuant to a Management and Marketing Agreement dated January 1, 1998 (the "Management Agreement"). The Management Agreement provides for a yearly fee of $750,425.00 plus yearly adjustments based upon increase in tuition payments over the preceding year. In addition, the Debtor leases the Real Property to HLA pursuant to that certain Commercial Lease dated January 1, 1998 and extended on December 31, 2007 (the "Lease").  The Lease provides for base rent of $12,800 per month plus percentage rent of: (i) 3% of the gross revenues for the [first] $184, 000 of gross revenue for the preceding month; (ii) 1% of the gross revenues from $184,000 to $414,166 for the proceeding month and, (iii) ½% of the gross revenues over $414,166 for the preceding

month.  Debtor intends to assume the Management Agreement and the Lease.  Debtor is also a party to certain leases with CitiCapital Technology Finance, Dell Financial Services, LP and Graybar Financial Services LLC for computer and telephone service.  Debtor will file a notice of intention to assume or reject these equipment leases within 10 (ten) days of the confirmation hearing date.

Nothing herein constitutes nor should it be construed as an admission or waiver of Debtor's rights to seek to challenge the agreements and request a legal determination that such agreements constitute financing agreements.  Debtor asserts that all obligations due and owing under the executory contracts and unexpired leases to be assumed hereunder are current.  Any party that asserts a cure claim shall file a request for determination of cure claim on or before sixty (60) days after mailing of notice of the Confirmation Order.  Any requests for determination of cure claim not filed on or before sixty (60) days after mailing of notice of the Confirmation Order will be waived and forever barred and the amounts determined to be due and owing by the Debtor shall become binding upon the parties and their successors, assigns, or heirs.  Any allowed cure amounts will be paid in six (6) equal monthly installments beginning the first month after the Effective Date of the Plan.

Any unexpired leases or executory contracts which are not assumed or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order.  Any claims which are not timely filed will be disallowed and discharged.

### G.    Avoidance Actions and Retained Rights

The Plan provides that the Debtor shall retain all rights of action against others.  The Plan also provides that the Debtor shall retain "Avoidance Actions" under chapter 5 of the Bankruptcy Code.

The Debtor may also have Claims against others which are retained.  Notwithstanding the foregoing, the Debtor is reviewing records and believes there are potential preference claims.  Further, the Debtor is not aware of any fraudulent conveyance claims.

### H.    Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.  A complete description of the treatment of each Class is set forth in Article 4 of the Plan.  A chart illustrating potential disbursements from the Distribution Fund is attached hereto and incorporated herein by reference as Exhibit "F".

A chart summarizing each Class and the proposed distribution for each Class is set forth below. A detailed discussion of each Class follows this chart.

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|

| 2 | Secured Claim of BB&T | No | Yes | Interest shall be reduced to 5% per annum and the Note will be amortized over 30 years with payment in full 60 months after the Effective Date. |
|---|---|---|---|---|
| 3 | Secured Tax Claims | No | Yes | Interest shall be paid at a fixed rate of 5% per annum on any secured tax claims and will be amortized over 5 years. |
| 4 | Secured Claim of Morris Law Firm | No | Yes | Interest shall be paid at a fixed rate of 5% per annum and the Note will be amortized over 5 years. |
| 5 | Secured Claim of GMAC secured by Uplander (I) | No | Yes | Paid in full in accordance with the contract terms with arrearages paid at the end of the contract term |
| 6 | Secured Claim of GMAC Secured by Uplander (II) | No | Yes | Paid in full in accordance with the contract terms with arrearages paid at the end of the contract term |
| 7 | Secured Claim of GMAC Secured by Cobalt | No | Yes | Paid in full in accordance with the contract terms with arrearages paid at the end of the contract term |
| 8 | Secured Claim of GMAC Secured by Malibu | No | Yes | Paid in full in accordance with the contract terms with arrearages paid at the end of the contract term |
| 9 | Unsecured Claims | Yes | Yes | Paid in full with interest at the prime rate from income produced over 7 |

| | | | | months in equal monthly installments beginning the month following the Effective Date. |
|---|---|---|---|---|
| 10 | Insider Claims | Yes | Yes | No distributions under the Plan. |
| 11 | Interest | Yes | No | All equity retained by current shareholder. |

6.1    Tax Claims.

6.1.1 <u>Class 1: Priority Tax Claims</u>.  Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive deferred equal monthly Cash payments over a five (5) year period from the Petition Date plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Debtor's scheduled $246,487.57 in priority tax debt owed to the United States Department of Labor, Internal Revenue Service, the Georgia Department of Revenue and Lumpkin County.

6.2    <u>Class 2</u>.  Class 2 consists of the Secured Claim of BB&T. BB&T's claim is secured by the Real Property as evidenced by the Deed to Secure debt filed with the Superior Court Clerk of Lumpkin County deed book number 1005, Page 652. As of the Filing Date, Debtor estimates that the amount due and owing to BB&T totaled approximately $6,541,000.00. Debtor estimates the value of the Real Property is Ten Million Dollars ($10,000,000.00). BB&T's claim is fully secured.  BB&T shall receive interest only payments for 59 months following the Effective Date and thereafter in the 60th month after the Effective Date shall be paid in full.  Simple interest shall accrue at the rate of five percent (5%) per annum.  Debtor

estimates the monthly plan payments for 59 months to BB&T will total approximately $36,500.00 with a balloon payment of approximately $4,400,000.00 due in the 60th month of the plan.

The Holder of the Class 2 Claim is impaired and entitled to vote to accept or reject the Plan.

6.3    Class 3.  Class 3 consists of Secured Tax Claims. As of the Filing Date, Debtor estimates that the amount due and owing to Lumpkin County  totaled approximately $16,084.07. The secured tax claims are secured by the Real Property as provided in O.C.G.A. 44-14-320 Debtor estimates the value of the Real Property is Ten Million Dollars ($10,000,000.00).  The secured tax claim is fully secured and the secured tax claim shall be paid in full plus simple interest at a rate of five percent (5%) per annum over 38 months after the Effective Date or paid upon the sale of property to which the lien attaches.

The Holder of the Class 3 Claim is impaired and is entitled to vote to accept or reject the Plan. Monthly plan payments will total approximately $450.00.

6.4    Class 4.  Class 4 consists of the Secured Claim of the Morris Law Firm. The Morris Law Firm claim is secured by the 5.1 acres of real property located at 830 Hidden Lake Road, Dahlonega, Georgia as evidenced by the Deed to Secure debt filed with the Superior Court Clerk of Lumpkin County deed book number 1069 Page 744 and book number 1121 page 224. As of the Filing Date, Debtor estimates that the amount due and owing to the Morris Law Firm totaled approximately $250,000.00. Debtor estimates the value of the Real Property is Ten Million Dollars ($10,000,000.00). The Morris Law Firm claim is fully secured.  The Morris Law Firm shall receive equal payments of principal and interest for 60 months after the Effective Date and shall be paid in full.  Simple interest shall accrue at the rate of five percent (5%) per annum.

The Holder of the Class 4 Claim is impaired and is entitled to vote to accept or reject the Plan.  Monthly plan payments will total approximately $4,720.00.

6.5    Class 5.  Class 5 consists of the Secured Claim of GMAC Uplander (I). GMAC's Claim is secured by a GMAC Uplander, VIN 1GNDV33L26D135077. The contract with GMAC for the purchase of the Uplander (I) provided for the purchase of the vehicle over 48 months with interest at the rate of 4.9% per annum.  The monthly contract payment is in the amount of $836.74. GMAC is secured and shall receive payments of principal and interest in accordance with its contract terms after the Effective Date until the obligations, including any arrearages, under the Uplander (I) contract are paid in full.

The Holder of the Class 5 Claim is impaired and is entitled to vote to accept or reject the Plan.  Monthly plan payments will total approximately $836.74.

6.6    Class 6.  Class 6 consists of the Secured Claim of GMAC Uplander (II). GMAC's Claim is secured by a GMAC Uplander, VIN 1GNDV33L66D188732. The contract with GMAC for the purchase of the Uplander (II) provided for the purchase of the vehicle over 48 months with interest at the rate of 4.9% per annum.  The monthly contract payment is in the amount of

$761.14. GMAC is secured and shall receive payments of principal and interest in accordance with its contract terms after the Effective Date until the obligations, including arrearages, under the Uplander (II) contract are paid in full.

The Holder of the Class 6 Claim is impaired and is entitled to vote to accept or reject the Plan. Monthly plan payments will total approximately $836.74.

6.7     Class 7.  Class 7 consists of the Secured Claim of GMAC Cobalt. GMAC's Claim is secured by a GMAC Cobalt, VIN 1G1AK58F587198803. The contract with GMAC for the purchase of the Cobalt provided for the purchase of the vehicle over 48 months with interest at the rate of 0.0% per annum.  The monthly contract payment is in the amount of $332.63. GMAC is secured and shall receive payments of principal and interest in accordance with its contract terms after the Effective Date until the obligations, including arrearages, under the Cobalt contract are paid in full.

The Holder of the Class 5 Claim is impaired and is entitled to vote to accept or reject the Plan. Monthly plan payments will total approximately $332.63.

6.8     Class 8.  Class 8 consists of the Secured Claim of GMAC Malibu. GMAC's Claim is secured by a GMAC Malibu, VIN 1G1ZS51F06F296217. The contract with GMAC for the purchase of the Malibu provided for the purchase of the vehicle over 36 months with interest at the rate of 3.9% per annum.  The monthly contract payment is in the amount of $503.00. GMAC is secured and shall receive payments of principal and interest in accordance with its contract terms after the Effective Date until the obligations, including arrearages, under the Malibu contract are paid in full.

The Holder of the Class 8 Claim is impaired and is entitled to vote to accept or reject the Plan. Monthly plan payments will total approximately $503.00.

6.9.     Class 9. Class 9 consists of the Unsecured Claims. Holders of Allowed Class 9 Claims shall receive a prorata share of 7 equal monthly payments to pay the Allowed Claim Class 5 claims in full plus interest at the prime rate.

The Holders of Class 9 Claims are unimpaired and are deemed to have accepted the Plan.

6.10     Class 10.  Class 10 consists of Insider Claims.  Insiders shall not receive any distributions under the Plan.

Holders of Class 10 Claims are impaired and deemed to reject the Plan.

6.11     Class 11. Class 11 consists of the Interest Claim. The current interest holders shall retain their interests in the Reorganized Debtor.

The holders of Class 11 Claims are unimpaired and are not entitled to vote to accept or reject the Plan.

## VII.    Administrative Expenses

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

7.1    <u>Summary</u>.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

7.2    <u>Administrative Expense Claims</u>.

7.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business, or otherwise assumed by the Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provides notice by mail or by publication, in a form and manner approved by the Court, of the occurrence of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor, the Estate, or the Reorganized Debtor.

7.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Debtor's attorneys' fees incurred during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court.   The Plan provides that the Debtor

may pay professional fees incurred after confirmation of the Plan without Court approval. The Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

The following chart illustrates Debtor's estimated administrative expenses and proposed treatment under the Plan:

| Type | Estimated Amount Owed | Treatment |
|---|---|---|
| Ordinary Course of Business Expenses | None anticipated | Paid in accordance with credit terms of each vendor.<br><br>Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order. |
| Professional Fees | Fees in excess of retainer are estimated not to exceed $25,000. | Paid pursuant to Court order. |
| Other Administrative Expenses | Estimated at no more than $28,000 | Paid in accordance with credit terms of each vendor.<br><br>Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order |
| U.S. Trustee Fees | None outstanding | Paid in full on the Effective Date of the Plan |

## VIII.  Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor

or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

The receipt by a Creditor or Interest of cash or property in full or partial payment of its Claim or Interest may be a taxable event.  To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income.  A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the holder receives amounts under the Plan.  Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a  Holder of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such Holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest.  Any amount so withheld will be credited against the Holder's federal income tax liability.

## IX.    Debtor's Operations After the Filing Date

Debtor has continued to operate its business as Debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

## X.    Liquidation Analysis

The Debtor's Plan provides funding for the Plan from ongoing business operations and to pay Holders of Allowed Unsecured Claims in full with interest.

In the event the Debtor's estate is liquidated, the unsecured creditors and Holders of Interests would receive an amount less than that proposed in the Plan. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the liquidation of non-exempt assets. Assets disposed of by "liquidation" or "fire" sale generally generate fewer proceeds than assets that are marketed and sold as a going concern. In addition an additional

layer of administrative expense would be added to the case thereby decreasing the amounts available to pay unsecured creditors.

The Debtor estimates that if the Real Property is sold at a "fire sale" the proceeds generated would would be used to satisfy the claims of the Secured Tax Claims and a portion of BB&T's claim. No funds would be available to disburse to unsecured creditors or Holders of Interests.

## XI.    Procedures for Treating and Resolving Disputed Claims

### A.    Objection To Claims

The Plan provides that the Reorganized Debtor shall be entitled to object to Claims, provided, however, that the Debtor and Reorganized Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan.  Any objections to Claims must be filed by the Claims Objection Deadline.  The Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) sixty (60) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

### B.    No Distributions Pending Allowance

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

### C.    Estimation of Claims

The Debtor or the Reorganized Debtor, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (and after the Effective Date, the Reorganized Debtor) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D.    Resolution of Claims Objections

On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XII.    Conditions Precedent to the Effective Date

### A.    Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article 11.3 of the Plan:  (a) the Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan; and (b) the Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Court.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of the Plan.

(a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

(b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Debtor, in its reasonable discretion.

(c)    The Debtor shall have received any necessary authorization, consent and/or regulatory approval.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor in their sole discretion).  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIII.    Certain Effects of Confirmation

### A.    Vesting of the Debtor's Assets

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor in the same right title and interest the Debtor held as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.    Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor, the Reorganized Debtor or its Estate that arose prior to the Effective Date.

### C.    Release by Debtor of Certain Parties

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Debtor, in its individual capacity and as a Debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring or the bankruptcy cases.   The Reorganized Debtor, and other potential representatives of the Estate shall be bound, to the same extent the Debtor is bound, by all of the releases set forth above.

The Released Parties include (i) all employees, consultants, agents, financial advisors, attorneys and other representatives of the Debtor who served in such capacity on or subsequent to the Filing Date, in each case in their capacity as such.

### D. <u>Release by Holders of Claims and Interests</u>

The Plan contains the following language regarding releases of claims by Holders of Claims and Interests:

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT VOTES TO ACCEPT THE PLAN OR IS PRESUMED TO HAVE VOTED FOR THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE; AND (b) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN A DEBTOR), THAT HAS HELD, HOLDS, OR MAY HOLD A CLAIM OR INTEREST (EACH, A "RELEASE OBLIGOR"), IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR UNDER THE PLAN AND THE CASH, AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THE PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY CLAIM OR CAUSE OF ACTION EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASE OBLIGOR, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION; PROVIDED, HOWEVER, THAT THIS ARTICLE 10.4 SHALL NOT RELEASE ANY RELEASED PARTY FROM ANY CAUSE OF ACTION HELD BY A GOVERNMENTAL ENTITY EXISTING AS OF THE EFFECTIVE DATE, BASED ON (i) THE INTERNAL REVENUE CODE OR OTHER DOMESTIC STATE, CITY OR MUNICIPAL TAX CODE, (ii) THE ENVIRONMENTAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iii) ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iv) THE EXCHANGE ACT, THE SECURITIES ACT, OR OTHER SECURITIES LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY, OR MUNICIPALITY, OR (v) SECTIONS 1104-1109 AND 1342(d) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED.**

### E. <u>Setoffs</u>

The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such entity, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such entity.

## F.    <u>Exculpation and Limitation of Liability</u>

Under the Plan, the Debtor, the Reorganized Debtor and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No  Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

## G.    <u>Injunction</u>

The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

## H.    <u>Miscellaneous Plan Provisions</u>

### 1.    <u>Modification of Plan</u>

The Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, the Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  The Debtor reserves the right

in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

## 2. Retention of Jurisdiction

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a) to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b) To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c) To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d) To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor and/or the Reorganized Debtor;

(e) To hear and rule upon all applications for Professional Compensation;

(f) To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g) To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h) To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i) To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j) To determine any suit or proceeding brought by the Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

(k)     To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under the Plan;

(l)     To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor  sold any of its assets during the Bankruptcy Cases; and

(o)     To enter a final decree.

## XIV.    Confirmation and Consummation Procedure

### A.    General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan.  As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims vote to accept the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by Holders of at least two-thirds of the dollar amount of the class and by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline.  Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement.  The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

### B.    Solicitation of Acceptances

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors and equity interest holders to make an informed decision whether to accept or reject the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

### C.    Acceptances Necessary to Confirm the Plan

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtor's creditors. The Voting Classes will be deemed to accept the Plan if at least two-third in amount and more than one-half in number of the Claims in each class vote to accept the Plan. Furthermore, unless there is unanimous acceptance of the Plan by the Voting Classes, the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

### D.      Confirmation of Plan Pursuant to Section 1129(b)

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes. To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan. Class 5 is deemed to reject the Plan. Accordingly, if any Impaired Class votes to accept the Plan, the Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### E.      Considerations Relevant to Acceptance of the Plan

The Debtor's recommendation that all Creditors vote to accept the Plan is premised upon the Debtor's view that the Plan is preferable to other alternatives for liquidation of the Debtor's estate. It appears unlikely to the Debtor that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan. If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

Respectfully submitted this 30th day of October, 2009.

**HIDDEN LAKE ACADEMY, INC.**

By:  */s/Leonard Buccellato*           __
Its: Chief Executive Officer

Debtor and Debtor in Possession

**ELLENBERG, OGIER, ROTHSCHILD & ROSENFELD, PC**
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 525-4000 Phone
(404) 526-8855 Facsimile
bem@eorrlaw.com

CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street
Atlanta, Georgia 30303

This 30th day of October, 2009.

**ELLENBERG, OGIER, ROTHSCHILD & ROSENFELD, PC**

*/s/ Barbara Ellis-Monro*
Barbara Ellis-Monro
Georgia Bar No. 246117
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 525-4000 Phone
(404) 526-8855 Facsimile
bem@eorrlaw.com

# EXHIBIT "A"

1:35 PM

05/27/09

Accrual Basis

# Hidden Lake Academy
## Profit & Loss
### April 30 through May 27, 2009

|  | Apr 30 - May 27, 09 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Management Fees | 18,093.78 |
| **Total Income** | 18,093.78 |
| **Expense** | |
| Insurance - Health | -861.57 |
| Insurance - Life | -14.52 |
| **Payroll Expenses** | |
| P/R - Academics | 4,847.39 |
| P/R - Admin | 1,735.62 |
| P/R - Admissions | 2,651.60 |
| P/R - Counseling | 5,935.44 |
| P/R - HR | 2,486.91 |
| P/R - Marketing | 1,368.54 |
| P/R - Operations | 1,205.45 |
| P/R - Recreation/Athletics | 3,204.43 |
| **Total Payroll Expenses** | 23,435.38 |
| Payroll tax - 940 | 6.18 |
| Payroll Tax - 941 | 1,726.88 |
| **Total Expense** | 24,292.35 |
| **Net Ordinary Income** | -6,198.57 |
| **Net Income** | -6,198.57 |

800/003 P.003/008    #1734    HIDDEN LAKE ACADEMY    MAY.28.2009 12:26 7068649109

# EXHIBIT "B"

8:45 AM
06/01/09
Accrual Basis

# Hidden Lake Academy
## Balance Sheet
### As of April 30, 2009

|  | Apr 30, 09 |
|---|---|
| **ASSETS** |  |
| **Current Assets** |  |
| **Checking/Savings** |  |
| B of A Payroll Account | -6,462.62 |
| UCB Payroll Acct 4122 | -31,543.97 |
| **Total Checking/Savings** | -38,006.59 |
| **Total Current Assets** | -38,006.59 |
| **Fixed Assets** |  |
| Accumulated Depreciation | -361,419.44 |
| Buildings | 1,273,854.43 |
| Furniture and Equipment | 13,211.82 |
| Land | 245,585.80 |
| **Total Fixed Assets** | 1,171,232.61 |
| **Other Assets** |  |
| Loan Origination Fees | 21,035.00 |
| **Total Other Assets** | 21,035.00 |
| **TOTAL ASSETS** | **1,154,261.02** |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| Accounts Payable | 61,610.28 |
| **Total Accounts Payable** | 61,610.28 |
| **Other Current Liabilities** |  |
| Current Portion BB&T Mortgage | 43,000.00 |
| Fed witholding payable | 242,841.49 |
| Insurance financing | 5,582.86 |
| Payroll Liabilities | 610.19 |
| State Payroll Taxes Payable | 50,038.75 |
| **Total Other Current Liabilities** | 342,073.29 |
| **Total Current Liabilities** | 403,683.57 |
| **Long Term Liabilities** |  |
| Due to HLA | 2,218.40 |
| Due to LAB | 3,200.00 |
| Mortgage payable B B & T | 1,504,282.00 |
| **Total Long Term Liabilities** | 1,509,700.40 |
| **Total Liabilities** | 1,913,383.97 |
| **Equity** |  |
| Opening Balance Equity | -739,526.52 |
| Net Income | -19,596.43 |
| **Total Equity** | -759,122.95 |
| **TOTAL LIABILITIES & EQUITY** | **1,154,261.02** |

# EXHIBIT "C"

Form **1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S Corporation.
▶ See separate instructions.

OMB No. 1545-0130

**2008**

For calendar year 2008 or tax year beginning _____ , 2008, ending _____ ,

| | | |
|---|---|---|
| **A** S election effective date<br>8/04/1994 | Use the IRS label. Other-wise, print or type. | HIDDEN LAKE ACADEMY, INC.<br>830 HIDDEN LAKE ROAD<br>DAHLONEGA, GA 30533 |
| **B** Business activity code number (see instrs)<br>611000 | | |
| **C** Check if Sch M-3 attached ☐ | | |

**D** Employer identification number
58-2124642

**E** Date incorporated
8/01/1994

**F** Total assets (see instructions)
$ 1,173,889.

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No  If 'Yes,' attach Form 2553 if not previously filed

**H** Check if: (1) ☐ Final return (2) ☐ Name change (3) ☐ Address change
(4) ☐ Amended return (5) ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ▶ 1

**Caution.** Include **only** trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---:|---:|
| **I**<br>**N**<br>**C**<br>**O**<br>**M**<br>**E** | 1a Gross receipts or sales | 659,662. | **b** Less returns and allowances | **c** Bal ▶ **1c** 659,662. |
| | 2 Cost of goods sold (Schedule A, line 8) | | | **2** |
| | 3 Gross profit. Subtract line 2 from line 1c | | | **3** 659,662. |
| | 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | **4** |
| | 5 Other income (loss) (attach statement) | | | **5** |
| | 6 **Total income (loss).** Add lines 3 through 5 | | ▶ | **6** 659,662. |
| **D**<br>**E**<br>**D**<br>**U**<br>**C**<br>**T**<br>**I**<br>**O**<br>**N**<br>**S** | 7 Compensation of officers | | | **7** |
| | 8 Salaries and wages (less employment credits) | | | **8** 552,064. |
| | 9 Repairs and maintenance | | | **9** |
| | 10 Bad debts | | | **10** |
| | 11 Rents | | | **11** |
| | 12 Taxes and licenses | SEE STATEMENT 1 | | **12** 66,788. |
| | 13 Interest | | | **13** |
| | 14 Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) | | | **14** 33,081. |
| | 15 Depletion **(Do not deduct oil and gas depletion.)** | | | **15** |
| | 16 Advertising | | | **16** 1,000. |
| | 17 Pension, profit-sharing, etc, plans | | | **17** |
| | 18 Employee benefit programs | | | **18** |
| | 19 Other deductions (attach statement) | SEE STATEMENT 2 | | **19** 14,393. |
| | 20 **Total deductions.** Add lines 7 through 19 | | ▶ | **20** 667,326. |
| | 21 **Ordinary business income (loss).** Subtract line 20 from line 6 | | | **21** -7,664. |

| | | | |
|---|---|---|---:|
| **T**<br>**A**<br>**X**<br>**A**<br>**N**<br>**D**<br>**P**<br>**A**<br>**Y**<br>**M**<br>**E**<br>**N**<br>**T**<br>**S** | 22a Excess net passive income or LIFO recapture tax (see instructions) | **22a** | |
| | **b** Tax from Schedule D (Form 1120S) | **22b** | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) | | **22c** |
| | 23a 2008 estimated tax payments and 2007 overpayment credited to 2008 | **23a** | |
| | **b** Tax deposited with Form 7004 | **23b** | |
| | **c** Credit for federal tax paid on fuels (attach Form 4136) | **23c** | |
| | **d** Add lines 23a through 23c | | **23d** |
| | 24 Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | **24** |
| | 25 Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | **25** |
| | 26 **Overpayment.** If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | **26** 0. |
| | 27 Enter amount from line 26 Credited to 2009 estimated tax _____ Refunded ▶ | | **27** |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ _____ Signature of officer    Date    _____ Title

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

| | |
|---|---|
| Preparer's signature ▶ | DAVID B. FLOYD, CPA     Date _____  Check if self-employed ☐  Preparer's SSN or PTIN |
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | DAVID B. FLOYD CPA, P.C.     EIN 58-2071491<br>300 COLONIAL CENTER PKWY STE 240<br>ROSWELL, GA 30076     Phone no. (770) 650-6824 |

**BAA** For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.

SPSA0105L  12/30/08      Form **1120S** (2008)

State Return

| **Schedule A** | **Cost of Goods Sold** (see instructions) | | | |
|---|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach statement) | 4 | |
| 5 | Other costs (attach statement) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:
  (i) ☐ Cost as described in Regulations section 1.471-3
  (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
  (iii) ☐ Other (Specify method used and attach explanation.)

b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ▸ ☐

c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ▸ ☐

| d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO | 9d | |

e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ☐ Yes ☐ No

f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ☐ Yes ☐ No

| **Schedule B** | **Other Information** (see instructions) | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  a ☒ Cash   b ☐ Accrual   c ☐ Other (specify) ▸ _____ | | |
| 2 | See the instructions and enter the: | | |
| | a Business activity ▸ SCHOOL MGMT    b Product or service ▸ MANAGEMENT | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) if 100% owned, was a QSub election made? | | X |
| 4 | Has this corporation filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? | | X |
| 5 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ▸ ☐ If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 6 | If the corporation: (a) was a C corporation before it elected to be an S corporation **or** the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation **and (b)** has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years ▸ $ _____ | | |
| 7 | Enter the accumulated earnings and profits of the corporation at the end of the tax year $ _____ | | |
| 8 | Are the corporation's total receipts (see instructions) for the tax year **and** its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 | | X |

| **Schedule K** | | **Shareholders' Pro Rata Share Items** | | Total amount |
|---|---|---|---|---|
| I N C O M E (L O S S) | 1 | Ordinary business income (loss) (page 1, line 21) | 1 | −7,664. |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) | 3a | |
| | b | Expenses from other rental activities (attach statement) | 3b | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Interest income | 4 | |
| | 5 | Dividends: a Ordinary dividends | 5a | |
| | | b Qualified dividends | 5b | |
| | 6 | Royalties | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b | Collectibles (28%) gain (loss) | 8b | |
| | c | Unrecaptured section 1250 gain (attach statement) | 8c | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 | Other income (loss) (see instructions) | 10 | |

Form 1120S (2008)

SPSA0112L   12/30/08

State Return

Shareholders' Pro Rata Share Items (continued) | | Total amount

| | | | |
|---|---|---|---|
| **Deductions** | 11 Section 179 deduction (attach Form 4562) | 11 | |
| | 12a Contributions .......... SEE STATEMENT 3 | 12a | 505. |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures (1) Type ▶ _____ (2) Amount ▶ | 12c (2) | |
| | d Other deductions (see instructions) ... Type ▶ | 12d | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | d Other rental real estate credits (see instrs)   Type ▶ | 13d | |
| | e Other rental credits (see instrs)   Type ▶ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit (attach Form 6478) | 13f | |
| | g Other credits (see instructions) ...... Type ▶ | 13g | |
| **Foreign Trans-actions** | 14a Name of country or U.S. possession ......   ▶ | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | *Foreign gross income sourced at corporate level* | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other (attach statement) | 14f | |
| | *Deductions allocated and apportioned at shareholder level* | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other (attach statement) | 14k | |
| | *Other information* | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued ... | 14l | |
| | m Reduction in taxes available for credit | | |
| | (attach statement) | 14m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | 407. |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties — gross income | 15d | |
| | e Oil, gas, and geothermal properties — deductions | 15e | |
| | f Other AMT items (attach statement) | 15f | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses | 16c | |
| | d Property distributions | 16d | |
| | e Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a Investment income | 17a | |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts | | |
| | (attach statement) | | |
| **Reconciliation** | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l ... | 18 | −8,169. |

BAA                                                                                     Form 1120S (2008)

SPSA0134L   06/25/08

State Return

**Schedule L** Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | -15,134. | | -10,019. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach stmt) SEE ST. 4 | | | | 500. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 1,287,066. | | 1,287,066. | |
| b Less accumulated depreciation | 334,786. | 952,280. | 367,938. | 919,128. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | 245,586. | | 245,586. |
| 13a Intangible assets (amortizable only) | 21,035. | | 21,035. | |
| b Less accumulated amortization | 1,316. | 19,719. | 2,341. | 18,694. |
| 14 Other assets (attach stmt) | | | | |
| 15 Total assets | | 1,202,451. | | 1,173,889. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 48,271. | | 74,028. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | 43,000. | | 43,000. |
| 18 Other current liabilities (attach stmt) SEE ST. 5 | | 142,511. | | 296,767. |
| 19 Loans from shareholders | | 39,200. | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | 1,504,282. | | 1,508,284. |
| 21 Other liabilities (attach statement) SEE ST. 6 | | 164,988. | | |
| 22 Capital stock | | 500. | | 500. |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings | | -740,301. | | -748,690. |
| 25 Adjustments to shareholders' equity (att stmt) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 1,202,451. | | 1,173,889. |

**Schedule M-1** Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | -8,389. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest. $ _____ | | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize): | | |
| a Depreciation $ _____ 71. | | a Depreciation $ _____ | | |
| SEE STATEMENT 7 | | | | |
| b Travel and entertainment $ ____ 149. | 220. | 7 Add lines 5 and 6 | | 0. |
| 4 Add lines 1 through 3 | -8,169. | 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 | | -8,169. |

**Schedule M-2** Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -740,301. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions | | | |
| 4 Loss from page 1, line 21 | ( 7,664.) | | |
| 5 Other reductions SEE STATEMENT 8 | ( 505.) | | |
| 6 Combine lines 1 through 5 | -748,470. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | -748,470. | | |

SPSA0134L 06/25/03

Form 1120S (2008)

State Return

**Schedule K-1**
(Form 1120S)

Department of the Treasury
Internal Revenue Service

**2008**

For calendar year 2008, or tax

year beginning _____, 2008

ending _____

OMB No. 1545-0130

☐ Amended K-1

**Shareholder's Share of Income, Deductions, Credits, etc.**  ➤ See page 2 of form and separate instructions.

## Part I  Information About the Corporation

**A** Corporation's employer identification number
58-2124642

**B** Corporation's name, address, city, state, and ZIP code
HIDDEN LAKE ACADEMY, INC.
830 HIDDEN LAKE ROAD
DAHLONEGA, GA 30533

**C** IRS Center where corporation filed return
CINCINNATI, OH

## Part II  Information About the Shareholder

**D** Shareholder's identifying number

**E** Shareholder's name, address, city, state, and ZIP code
LEONARD A. BUCCELLATO
3340 PEACHTREE RD    STE 1125
ATLANTA, GA 30326

**F** Shareholder's percentage of stock
ownership for tax year ...................    100 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

### Part III  Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) −7,664. | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items A  407. |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| 12 | Other deductions A  505. | | |
| | | 17 | Other information |
| | | | *See attached statement for additional information. |

BAA  For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

SHAREHOLDER 1

Schedule K-1 (Form 1120S) 2008

SPSA0412L  12/10/08

State Return

671108

| | | | |
|---|---|---|---|
| Schedule K-1 | **2008** | ☐ Final K-1    ☐ Amended K-1 | OMB No. 1545-0130 |

(Form 1120S)

For calendar year 2008, or tax

Department of the Treasury
Internal Revenue Service

year beginning _____ , 2008
ending _____

## Shareholder's Share of Income, Deductions, Credits, etc. ► See page 2 of form and separate instructions.

| Part II | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | | |
|---|---|---|---|---|
| **Part I** | **Information About the Corporation** | 1 | Ordinary business income (loss) -7,664. | 13 Credits |
| **A** Corporation's employer identification number 58-2124642 | | 2 | Net rental real estate income (loss) | |
| **B** Corporation's name, address, city, state, and ZIP code | | 3 | Other net rental income (loss) | |
| HIDDEN LAKE ACADEMY, INC. 830 HIDDEN LAKE ROAD DAHLONEGA, GA 30533 | | 4 | Interest income | |
| | | 5a | Ordinary dividends | |
| | | 5b | Qualified dividends | 14 Foreign transactions |
| | | 6 | Royalties | |
| **C** IRS Center where corporation filed return CINCINNATI, OH | | 7 | Net short-term capital gain (loss) | |
| **Part II** | **Information About the Shareholder** | 8a | Net long-term capital gain (loss) | |
| **D** Shareholder's identifying number | | 8b | Collectibles (28%) gain (loss) | |
| | | 8c | Unrecaptured section 1250 gain | |
| **E** Shareholder's name, address, city, state, and ZIP code | | 9 | Net section 1231 gain (loss) | |
| LEONARD A. BUCCELLATO 3340 PEACHTREE RD    STE 1125 ATLANTA, GA 30326 | | 10 | Other income (loss) | 15 Alternative minimum tax (AMT) items A    407. |
| **F** Shareholder's percentage of stock ownership for tax year . . . . . . . . . . . . . . . . . 100 % | | | | |
| F O R  I R S  U S E  O N L Y | | 11 | Section 179 deduction | 16 Items affecting shareholder basis |
| | | 12 | Other deductions A    505. | |
| | | | | 17 Other information |
| | | *See attached statement for additional information. | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 30, 2009, I served a copy of the within and foregoing Disclosure Statement For Plan of Reorganization For Hidden Lake Academy, Inc., by depositing same in the United States Mail in an envelope with adequate postage affixed thereto to assure delivery addressed as follows:

> Jim H. Morawetz, Esq.
> Office of the United States Trustee
> 362 Richard Russell Building
> 75 Spring Street, S.W.
> Atlanta, Georgia   30303

This 30th day of October, 2009.

*//s// Barbara Ellis-Monro*
Barbara Ellis-Monro
Georgia Bar No. 246117
Counsel for the debtor and debtor in
possession

Ellenberg, Ogier, Rothschild & Rosenfeld, PC
170 Mitchell St., SW
Atlanta, Georgia 30303
404-525-4000 Telephone
404-526-8855 Facsimile
bem@eorrlaw.com